Appellant, Wheeling & Lake Erie Railway Company. This appeal today is an appeal of a decision of the United States Appeal Court for the District of Maine entered on April 15, 2014. That decision was affirmed by the Appellate Panel for this circuit by its order dated I believe it was December 9, 2014. The appeal raises important questions in commercial finance and that is the proper method by which a secured lender can obtain, enforce, and perfect a security interest when the asset in question constitutes payment rights that arise under an insurance policy. Now it's important to keep in mind that there is nothing wrong or bad or illegal or immoral about taking a security interest in payments under an insurance policy. This appeal is not about whether or not that's a proper thing to do, a good thing or a bad thing. That it's clearly allowed. It's been done for a long time. What this appeal focuses on is how one must do it. What is the proper means under the law for perfecting, enforcing, and obtaining a valid security interest in insurance proceeds. And these are... And isn't the insurance exclusion a good deal broader than, for example, the tort exclusion so that it would cover more than a... Well, Your Honor, I would say it's not broader and the reason that I say that is that both the insurance exclusion and the tort exclusion exclude a particular asset, which is a claim under an insurance policy on the one hand and a commercial tort on the other hand. Well, it's not limited to excluding a claim under an insurance policy in that the Sixth Circuit decision holds that, that it goes beyond a claim. It's any interest in the policy, right? Yes, Your Honor, but I think you need to take into account the changes that were made by the 2,000 amendments to the Uniform Commercial Code. Do those changes really work in your favor? I believe they do. But then why would they put in the health care, the specific language about health care insurance receivables if those changes, as you say, relate to claims for insurance generally? Well, Your Honor, I think the health care receivable example is a particular example and as one knows, legislation is an interesting process. It doesn't always necessarily proceed the way courts, judges, and professors and law students would like it to. But we're told to construe statutes so as not to render any language in them surplus or meaningless or redundant and if your definition of accounts and payment intangibles in the revised Article 9 is correct, then the entire provision for health care insurance receivables is totally superfluous. Well, Your Honor, possibly, but maybe not because there may be other payment rights or payment intangibles that would come under a health care contract that does not meet the definition of a health care receivable. That is a defined term. Payment intangible is far broader. It's any money, any money that may come out of a contract. So it's not entirely superfluous and I submit the, when the amendments were made, folks had in mind, were thinking about health care receivables because that was becoming a major, a major commercial thrust and so they called it out. They said, we don't want to, this is one example that we're really thinking about, so we want to legislate about it. But that doesn't preclude other cases in which the payment intangible concept might apply and, as I said, there may be numerous contracts that relate to health care that generate payment intangibles per se, but not necessarily a right to a so-called account receivable, a health care account receivable, a patient service. So with that in mind, and going back to the question originally posed as to, well, isn't there more in the insurance exclusion than there is in other exclusions? The answer is there are more words, but the concept remains there is no express mention of accounts or payment intangibles or payment rights and that should be distinguished from other provisions of the exclusions where there is express reference to accounts, payment rights, and payment intangibles. Even if, even if you were right about the limited nature of the insurance exclusion that were limited to claims, wouldn't it be the case that here the payment right arose after the bankruptcy petition and therefore wouldn't be covered by the security agreement? Your Honor, I do not think that would be the case, and this is the reason. In insurance law and insurance parlance, the payment right actually arises when the insurance policy is delivered, when the contract is entered into. At that point in time, it is a contingent, a liquidated payment right. And at that point in time, a number of conditions have to occur before that payment right can be liquidated. And those conditions are, there has to be a loss within the meaning of the loan. Well, isn't the payment right the proceeds from the claim? Well, the payment rights may be proceeds of the claim, but we're looking at the payment right as an original item of collateral. And what our contention is, is that when... As being separate from the claim itself? Correct. Yes. And that's an important distinction. Let me, let me just go back and finish my first answer, then I'll address the second point, which is also an important one. But the payment right arose when the policy was entered into. It was contingent, it was unliquidated, it couldn't be enforced. But contingencies occurred that made it enforceable. Now this court addressed that exact situation in the context of a contingent contract in the Cato versus Schlickman case. And in that court, in that case, there was a contingent fee arrangement that a lawyer had granted to a bank. The bank, I'm sorry, the lawyer had granted a security interest in the contingent fee, his contingent fee arrangement to a lender. Now at the grant of the security interest, there was no right to payment under that contingent fee agreement. The contingency hadn't been materialized. Later, the debtor, the grantor of the security interest, filed a bankruptcy petition. And after the bankruptcy petition, the contingency became liquidated. In other words, that case would be pertinent if the right to payment is separate from the claim as opposed to resulting from the claim when it becomes liquidated. That's right. And that's really the second part that I wanted to address. There is a pronounced distinction between a right to payment and a claim. Now we have to remember that we're not talking about the definition of claim under the bankruptcy code, which is broad enough to cover almost anything. What we're talking about is under state law. Under state law, is a claim in a payment right, is a claim under insurance policy something different from a right to payment? I submit that it is. A claim is a step, a process that an insured must undertake pursuant to a policy in order to realize a payment. So if a loss occurs, such as the derailment here, the policy says, Mr. Insured or Corporate Insured, you must do the following things now. You must submit to us a claim. You must state what your losses are. You must state how much money you wrote. You must permit us to investigate, to interview your employees. You must do all these things. That's a claim. Now at that point, there's no duty of the insurance company to fork over any money. That's not a payment right. It's contingent, but there's no payment. Now later, if the claim is allowed, then a payment right arises. That is entirely distinct from the claim. The insurance industry, cases, all recognize that a claim is something different from the payment, and that is because a claim has its own set of rights, its own set of contractual provisions. And interestingly, they can't be the same because one can exist without the other. So you can have a claim that actually results in no payment right. So for example, if I have a claim that my insurance company must pay a third party some money, well, I have a claim, but I don't have any payment intangible. I have no payment right. I have no right to say, insurance company, pay me money. That insurance policy assures that a third party might get paid, such as a liability policy or a mortgagee's policy. So there you have a claim and no payment right. But it doesn't work the other way around. You can't have a payment right without a claim. You can, Your Honor. You can, Your Honor. That was where I was going next. You can have a right to payment, but no claim. So for example, a mortgagee, let's go to the mortgagee clause in insurance policy. A mortgagee might have a right to payment under a policy, and the insured might have a claim. The mortgagee wouldn't have a claim, but he'd have a payment right. But the mortgagee has no right to payment unless there is a claim made. Well, somebody... The right to payment cannot exist in free air. It's a precondition, but they're two things. But they're separate things. You could also have a claim, and you could have a payment right denied. So there are, in fact, a number of circumstances in which they differ. You can have a claim in a contingent payment right, a claim in a disputed payment right, in which case no money will change hands, but you have a claim. So I submit that while it may be possible to conceive some state of the world where you can't have one without the other, I say in many, you can. And I think because there are many circumstances under which claims operate separately and apart from payment rights, that they must be different things. And because they're different things, and because the statute precludes claims but not payment rights, and because other parts of the statute include payment rights, then it should be recognized as Uniform Commercial Code collateral. Thank you. Thank you. Mr. Keech. Thank you, Your Honors. May it please the Court. Robert Keech, the Chapter 11 trustee from Montreal, Maine, and Atlantic Railway Limited, and the appellee here. This case is a straightforward case of statutory construction, of construing a statute, in this case the insurance exclusion of the Maine UCC, in accordance with its well-established plain meaning. Affirmance of the well-reasoned opinions below will not in any way negatively affect commercial finance practice or market expectations. The decisions below did not change, but in fact affirmed long-standing commercial practice and expectations with respect to how one takes and perfects a security interest in an insurance policy and claims arising there under, including within claims arising there under rights to payment and proceeds. And the way that happens is quite simple. One either becomes a lost payee in the policy or a named insured in the policy, or the secured party takes a direct assignment of the policy and notifies the insurer. There's no mystery behind how one does this. That didn't change with the 2000 amendments to the UCC. The problem in this case is that Wheeling did neither of those things. And now seeks to have this Court adopt a tortured and frankly nonsensical construction of the insurance exception in order to excuse its omissions and create a windfall for itself to the detriment of the other creditors of this bankruptcy estate. As with the two courts below, this attempt should be rejected without basis in the language of the statute or in the case law or for that matter in common sense. Wheeling concedes, as Mr. Marcus just did again, that it did not take a security interest in the traveler's policy at issue as original collateral. That policy insured against loss or damage to physical property as well as for business interruption. Wheeling's security interest in relevant part extended to accounts and other rights to payment including payment intangibles and to additions, accessions, substitutions, replacements, products, two or four in all cash or non-cash proceeds of any of the foregoing including insurance proceeds. Wheeling, however, and again Mr. Marcus just confirmed this again, is not claiming that the settlement monies here were proceeds of any pre-petition right it had other than its alleged separate right to payment. Wheeling has taken varying positions as to when this right to payment comes into being. Can the right to payment be separated from the claim? In this case, no, Your Honor. I think in the case of the insurance exclusion, it's clear that the drafters intended claims arising under insurance to include not only rights to payment but also proceeds. I think that's evident from the language of the statute. Well, yeah, I understand that point, but what I was asking you really is if one accepts their view of the scope of the insurance exclusion which is, as I understand it, that it's limited only to claims and that it doesn't include a right to payment, you also argue that under the bankruptcy code that because the right to payment here arose after the filing of the petition, that it's excluded by the bankruptcy code, right? That's correct, Your Honor. I think they're stuck. One of the reasons they've taken varying positions as to when this right to payment allegedly came into being is that under one circumstance it would clearly run afoul of the insurance exception and under the other it clearly runs afoul of Section 552A of the bankruptcy code. Let me take each of those. Mr. Marcus argued below originally that the right to payment didn't arise until the check was literally written by the insurance company. One would think that it would have been actually when the settlement agreement was reached post-petition. But in either event, if you're going to treat the right to payment not as proceeds but as original collateral, that means that his security interests could first have attached to that item post-bankruptcy. In other words, it didn't exist as a right to payment, something in which he allegedly had an interest, until post-bankruptcy. It would, therefore, be cut off by 552A. That's a very distinct situation from the Cadle case, which is a very different circumstance, in which there was clearly a security interest granted in the specific account at issue pre-bankruptcy. The work for the contingent fee was finished post-bankruptcy and the proceeds of that account realized. And Cadle is merely a proceeds case. Cadle is a 552B proceeds case. This case, however, would not be proceeds, as they've never, ever taken the position that this is proceeds, but rather original collateral. Realizing, perhaps, the impact of saying that the right to payment first existed post-bankruptcy, Mr. Marcus has occasionally argued that the right to payment, as he just did, the right to payment arises from the time the policy is issued. Well, if the right to payment arises at the time the policy is issued, it can only spring from the policy itself. It has to be an aspect of the policy and, therefore, would clearly be within the insurance exclusion. There's nothing in either the original insurance exclusion or the amended insurance exclusion that would suggest that you can separate from the insurance policy either claims under it, rights to payments under it, or proceeds. The language of the statute, I think, makes it abundantly clear for a couple of reasons. One, the use of the words claim under a policy of insurance are not, are clearly not limited to the process by which one gets money, but not the money itself. You wouldn't exclude from consideration collateral that had no monetary value. There would be no point in doing so. More importantly, the end of the insurance exclusion contains a specific exception for proceeds, specifically derivative proceeds. In other words, you can take as collateral, as proceeds of your collateral, derivative insurance. If you require that your collateral be specifically insured and your equipment is destroyed and insurance is paid, that proceeds interest is within the Uniform Commercial Code by virtue of the exception at the end of the insurance exclusion. Well, if claim, if interest in or claim under a policy of insurance did not include rights to payment or proceeds, there would be no reason to exclude out of that general universe of proceeds a subset of proceeds. So the language of the statute doesn't permit the separation between claims and payment rights and proceeds that Mr. Marcus wants. So regardless of when he alleges his right to payment arises, he either loses under 552A or is clearly within the insurance exclusion. In your views, the insurance exclusion is broader than the tort exclusion? It is, Your Honor. And, in fact, the comment, including the 2000 comment, refers to the exclusion as a broad exclusion of interest in insurance policies, leavened only somewhat by the exclusion in 2000 of so-called health care insurance receivables. More importantly, I also think their tort claim example doesn't help them at all. If you look at the comment to the commercial tort claim or tort claim example that they refer to, it talks about the fact that while a security interest cannot be taken in a personal injury or wrongful death tort claim, a non-commercial tort claim, that it is possible to take a security interest in the settlement proceeds from such a tort claim. If you look at the reasons why that's true, it's not because you have a claim that then gets converted into a right to payment and those are separate things. The comment and the cases under that make it very clear that what's happening is not the conversion of a claim into a right to payment. What's at issue is the conversion of a tort claim into a contract claim. Once it's reduced to a settlement, it's a contract claim. Contract claims are not excluded and, therefore, you can take a security interest in the proceeds of the contract claim. It has nothing to do with this artificial distinction between claims and rights to payment. That doesn't exist within the tort claims exclusion. It doesn't exist within the insurance claims exclusion. The 2000 amendments, as we pointed out, did a couple of things, none of which actually helped Wheeling's case. With respect to the insurance exclusion, I think, as your honors have pointed out, it carved out health care insurance receivables. The fact that that exclusion was necessary suggests the breadth of the exclusion itself. It also suggests that if the legislature had wanted to do more than that, it knew how to do it and clearly didn't. It also expanded the definition of accounts to include some insurance-related rights, specifically the rights to receive premiums or commissions for policies issued or to be issued. But in no sense did it expand or contract the insurance policy exclusion or expand rights and insurance policies in a way that's helpful in this case. As the BAP pointed out, and I think as is evident from the argument, if you were to have a definition of right to payment that is as broad as the right to payment definition Wheeling seeks, you would completely eviscerate and eliminate the insurance exclusion altogether. Because what Wheeling is arguing is that rights to payment always exist when policies are issued, the minute the policy is issued. If that policy is itself a right to payment, it will always be within the UCC and never be excluded. There's no basis to distinguish between the right to payment within the policy and the policy itself. After all, the only reason anyone gets insurance is to get the money from the policy. There's no other reason why one takes out a policy of insurance. If you assume, and I think one has to, therefore, that this entire matter was outside the UCC, then the only issue below was whether or not Wheeling had properly perfected through common law means. It clearly, and I think conceitedly, did not. It did not take a direct assignment of the policy. The policy didn't exist at the time of its security agreement. It didn't attempt to describe the policy. It took no direct assignment of the policy in any way, shape, or form. More importantly, it didn't do the simplest form of perfection recognized by the existing cases, particularly Big Squaw. It didn't notify the insurer of its alleged security interest. Again, there's a lot in the Wheeling brief about sort of mystery and confusion about how one does this. In fact, there's no mystery and no confusion. You simply notify the insurer. Those of us who have been in commercial practice for as long as Mr. Marcus and I know this, we've been doing it for a long time. Most insurance companies have pre-printed forms they'll be happy to give you for this purpose. So what we have is a situation where we have a transaction outside of the UCC by virtue of the insurance exclusion. That result was not changed in any way, shape, or form by the 2000 amendments. And we have an utter lack of perfection. For those reasons, both courts below got this right. This is not an asset in which Wheeling acquired a security interest or perfected a security interest. And even if it had bothered to get one under its argument, under its somewhat strained argument, it would be cut off by 552. Accordingly, Your Honors, we urge affirmance of the two decisions below. Thank you. Thank you. Your Honors, we spent time this morning talking about whether a claim is the same thing or a different thing from a right to payment. And I submit there are plausible arguments that it is and want to make arguments that it's not. I'm not sure we're ever going to find a source of any law that's going to definitively decide whether a claim and a payment right are the same. It's not the statute. It's not the Constitution. It's not any place I know. What drives the case, what ought to drive the decision, is the admonition that is in the Uniform Commercial Code itself in Section 1-1103. That's the main citation. This is a uniform provision. And that says to courts, when you're interpreting this law, this statute, we, the legislature who enacted it, want you to interpret it in a way that accomplishes a number of purposes. Number one is facilitate emerging commercial practices. Number two, make the rules clear. Number three, uniformity. That's what the legislature wants. I don't think the court necessarily has to decide, is my interpretation of claims versus payment right the only permissible one in the universe? It probably isn't. As Mr. Keach said, everything comes out of the policy. Well, if that were the answer, I wouldn't be here, none of us would. The question is, is there a plausible and reasonable basis to say that, well, claims are excluded, and that's something that is valuable in and of itself because you get to control the policy, but once it comes a payment right, the lender ought to be able to get that, if it's bargained for that. I'm not saying the lender gets it if it hasn't bargained for it, but if it has, why shouldn't it? Now, that being said, I submit that the legislation requires an interpretation that makes it easy, low transaction costs, and certain how to perfect that interest. The problem with the common law analysis is both courts said, well, Wheeling didn't have possession of the original policy. True, we didn't. I don't know what the original is. In today's day and age, with the electronic enactments in 47 states that permit electronic signatures and electronic agreements, I don't know what an original policy is anymore. It might have been a useful concept 25 years ago. It's no longer a useful concept. Except Wheeling had lots of ways to protect itself and avoid this result and availed itself of none of them. It could have taken a direct assignment of the policy. It could have insisted as a condition of the line of credit that it be named as a lost payee. That's what prudent lenders do, and none of those were taken here. There was no notice to creditors at all of this alleged security interest. Except for the fact that they took a specific lien in all payment rights under any contract. That's true. Payment intangible. That's true.  That should be the notice to lenders. But if that's the notice to lenders, that reads the insurance exclusion under Article 9 into oblivion. Well, I submit that it doesn't because there's plenty left to it. Well, there's plenty left to it. There's the concept of a claim. A lender would like to control a claim as well. You get to settle it, decide it, dispose of it. That's off limits because of the language. You can argue whether that's a good idea or not, but it's off limits. Well, that means that the insurance exclusion is limited to claims, and it doesn't say that. That's the problem. Well, it says insurance policies and claims. No, it says interest in. Interest in. That's right. That's right. And to say that a right to the payment of insurance proceeds isn't an interest in insurance, I just don't see how you can do that. Well, by the same token, you can't get an interest in a commercial tort claim, but you can get a. . . The commercial tort exclusion is limited to claims. The interest language only appears in the insurance exclusion. It has between those two. And, Your Honor, that may well be, but again . . . No, it's not that may well be. That is. All right, it is, but that doesn't answer the question. And the reason it doesn't answer the question is that, again, it is appropriate for the court to interpret and enforce the UCC in a way that facilitates commerce, not that makes it difficult and murky and difficult and impossible to apply. That's where we are with the common law today. Nobody really knows how to do it. Both courts confessed they don't know how to do it. And that's not a good state. All it does is increase transaction costs and makes this kind of financing unavailable, expensive, and difficult to procure. There's no reason for that. And we could argue the wording and semantics were a long time. I don't think they are at dispositive. It's what is the proper policy and proper interpretation of the code, which is what the drafters wanted to make sure that it facilitates commerce and uniformity. Thank you. Thank you.